7-4, United States v. Jonathan Tanguay. Good morning, Ms. Ritchie. Go ahead. May it please the Court, good morning. Martin Ritchie of the Federal Defender Office on behalf of Appellant Jonathan Tanguay. This is a case where probable cause rises and falls on the credibility of the reporter, Joshua Wiggin. Unlike many other cases, there was no independent corroboration of the allegations of criminal misconduct that Wiggin made. Because his initial communication was via an email written under a false name, Lt. Nolet went to the Conway Police Department and spoke with officers there to see whether they knew Joshua Wiggin. She was told a series of facts which established, as the District Court found, that Wiggin had a history of mental instability and a criminal record that included a felony conviction for uttering a forged prescription. Notwithstanding these red flags, Nolet failed to ask a single follow-up question and she therefore failed to learn that Wiggin's criminal history also included a conviction, a juvenile adjudication, for making a false report to the police. Particular facts of that case are outlined at the beginning of my principle brief. The District Court thought that it was precluded as a matter of law from inferring recklessness from Lt. Nolet's failure to follow up and from considering Wiggin's false reporting adjudication in its probable cause analysis. We argue that this was error and that in the particular circumstances of this case, recklessness should be inferred from Nolet's failure to follow up. The false reporting conviction should be part of the probable cause analysis and that it vitiates probable cause. So the fact that the District Court found that she had no obligation, as I recall, to go back and find out about the false reporting, you disagree with that finding, I gather? We do, and I think that was not a finding of fact. That was the Court's interpretation of the law, and particularly this Court's cases, of Ranney and Castillo, which it cited for that proposition. So we argue that that was an error of law, not a finding of fact. Setting aside the failure to inquire that would have led to the discovery of the false report, are you challenging whether there's probable cause for the affidavit, for the warrant, given the other omissions? We are. The District Court correctly found, and the government doesn't dispute, that she recklessly omitted the forgery conviction, the history of mental instability. There was significant discrepancy in the story he, Mr. Wiggin wrote in the notes he brought to the interview, and then what he said in the interview. Those were the three reckless omissions. The Court found probable cause, however, because in the end, Wiggin was a named source, and because Wiggin had cause to be embarrassed for coming forward.  And give a detailed account. The government certainly argues that that enforces probable cause. I argue that that's basically a wash in the mix, because one can give a detailed false account, and one can give a non-detailed false account. Going back to the question of whether there was a duty to inquire about the false report, wouldn't the sort of facial detail of the report that the witness is making about what he observed be of some relevance, even if there was not a per se bar against a requirement for a police officer to inquire in some circumstance? Wouldn't the fact that they had received a very detailed report from a witness who was making statements that might be embarrassing, etc., play into our calculus of whether there should have been a duty on the police officer to have inquired further? Well, I'm not sure that it's entitled to very much weight. Again, one can give a very detailed false report, as Wiggin did. No, I know you could, but I guess if the idea would be, was it reckless not to inquire further? Yes, it was. Right, but why wouldn't the relative detail of what the witness is saying, in addition to the fact that it was against interest or might be embarrassing, and that they had personal knowledge of what they were attesting to, all be relevant to how reckless it was not to go the additional step of inquiring about information you didn't even have? Well, she had a detailed report, but she also was put on notice that this is someone with a history of mental instability and someone who had at least falsified a prescription and was convicted of a felony for that. Let me just try it one other way. If the failure to inquire is the problem because it didn't turn up the other report and that would have tipped the balance on probable cause, right, which is one argument you're making. Yes. Okay. For that to be true, we should assume then that without the report, that false report, what she had in front of her would establish probable cause. Otherwise, you wouldn't need to show that there was an additional false report, right? The additional false report matters only if, absent that, there would have been probable cause. Otherwise, we don't have to reach that question at all because you just win on what was before her. Right? That's right. Okay. So if that's the case, then I guess she has before her a document that we're stipulating for the purpose of this discussion satisfies probable cause. So how could it have been reckless for her not to have inquired further? Do you follow? I'm afraid I don't because... Well, so let me try to get at Judge Barron's point this way. All right? You've been urging us to hold that a duty of further inquiry can exist on the part of a defiant. All right? You'll concede, however, that that duty is not an absolute duty. All right? That not every time that a police officer presents an affidavit in support of a warrant is there a duty of further inquiry. There have to be some circumstances that make it reckless or unreasonable not to make further inquiry. Right? Of course. So it's a totality-of-the-circumstances approach, and obviously the strength of the probable cause showing, a proxy for which may be the detailed nature of the showing, is one of those circumstances. Certainly. So what circumstances are there present here that created a duty upon the judge, faced as she was with a very detailed account by a person who thought, who described himself plausibly as being an eyewitness to the crime, and what all the circumstances that Lieutenant Nolet described, he was revealing information that was embarrassing to himself and putting him in a bad light with the family, et cetera, et cetera. What special circumstances were there here that put a specific duty upon this officer to inquire further? Well, they were exactly what she learned from the Conway police officer. That he had scrapes with the law. Including a felony conviction for uttering a forged conviction, which is a discipline. But that she did include in her affidavit. She did. Okay. But she didn't inquire. She didn't say what did he mean by scrapes with the law, what other scrapes. That's the step she should have taken. That he had this history of mental instability, which the district court found was relevant to the probable cause determination. Yes. But she had, at that point, when she started to draft the affidavit, she had observed him.  She had seen his notes. And she had made a value judgment of what she thought was the reliability of what he was saying based on everything. So what would make her necessarily say, well, if I go back, maybe I'll find something else which would make this unreliable. Is that your position? Well, first, it's not her determination to make whether his story is true or not. She needs to present all of the facts. Well, you're saying that the fact that hasn't been shown is that he had this history, not that the facts which he delineated in his conversation with her that were in his notes were inaccurate. You're saying that even with all of that, there was a requirement that she would go back further into his background. Well, the notes, his account was not corroborated. I started out with that. Temporally, before she met with him, she had spoken to Sergeant Breuer, and she had learned these facts which she omitted. She had learned that there were issues with this man, and she shouldn't take his word at face value, no matter how detailed it was. Is it the phrase scrapes with the law? Is that the triggering point for you? No. Well, not necessarily. It's the combination. Let's say that hadn't been said. Well, she should have inquired about, I think, further about the felony conviction for uttering the forced prescription. I think she went to the fact that she went to the police department tells you something, that she was suspicious and wanted to know something about this fellow. She could have asked, and we submit should have asked, that they give a full account of what they knew about him. And had they done that, the Concord Police Report is in the appendix starting at page 57, and it lists all of these offenses, including the false report. So it's as if she heard what she wanted to hear or didn't hear. We say turn the blind eye to the material that raised questions about his credibility. Thank you. Good morning. Seth A. Frame for the United States. I think the point, Judge Barron, that you were getting to is that the law is clear that once there is probable cause, that an officer doesn't have a duty to further investigate. And I think the point here is that the affidavit did establish probable cause for all the reasons that we talked about. Can I just ask you, superficially that sounds right, but wouldn't that also suggest that if the document showed probable cause, it wouldn't be reckless to have omitted something? But we don't say that. We say actually the omission has to factor in. So if an omission has to factor in, why not also say, gee, if it would have been so clear that if you had asked another question, you would have found something else that omitted, maybe you should have to ask the other question. I mean, I guess that in a way merges the two parts of Frank's, which are materiality and recklessness. And our circuit law says that recklessness exists when someone omits a fact that a judge would want to know. And I don't dispute that a judge would have wanted to have known the facts that were known to know that bore on credibility. So the purpose of the Warren procedure in an ex parte procedure is to put before a neutral magistrate those facts that are relevant. And our circuit law in Burke v. Town & Walpole essentially takes an objective approach to this recklessness omission issue that really does in a sense merge with materiality, but the difference is you could still have things that are reckless that in the end end up not being material because what's on the probable side of the equation overwhelms those things that were omitted. But you should have put them in because a judge would have wanted to have known them. I think we have that here. I'm not disputing that a police officer should put in that I know that this person had a false script conviction. That should have been put in. It does not tip the balance. The balance is all those things that you talked about with Mr. Tangway's lawyer. Are you arguing that if she had put in the false report from before that that would tip the balance?  That also would not tip the balance. I'm sorry. The one we don't know about? The one we don't know about. I still say it won't because of its age, and I cited the Melling case from the Ninth Circuit. That's a matter of judgment. How old is it? It's 1998. He was a juvenile. He was 16, 17. So he was 12 years old at the time? Yes. So that would be my argument on that point. That's a matter of judgment. I mean, you know, at some point, at some point when enough of these aggregated facts can make someone unreliable, but the older they are, the juvenile nature of it, those things certainly tug in favor of saying that they don't. I can say that the false script conviction is still a criminal falsity. I'm not saying it's not. However, facts matter, and the facts are he turned a 3, 2, and 8 on a script. He was called out on it by the police, and he immediately acknowledged it. So those facts suggest that it's not of that, you know, the most sinister kind of criminal falsity conviction. That would be taken into account as well. But the closest issue in this case, to my mind at least, is whether and to what extent an officer in Nolet's position has a duty of further inquiry. I agree with that. All right. And you will admit, will you not, that there are some circumstances in which there is a duty of further inquiry? I would admit, I think my position is that yes, but willful blindness, which I think is the notion that the defendant talks about, is the right one, because Frank's is a doctrine of bad faith. It's not a doctrine of poor police work. So to get to the you need to go further, right, willful blindness is a stand-in for knowledge. We say that all the time in the criminal law, right? You can be convicted of a crime that requires knowing misconduct because you were willfully blind of something. So I do think if Nolet were willfully blind, that then perhaps there's a duty to investigate. Basically, all she would have had to have done was say, is there anything else? Well, I don't know that Boyer, there's no evidence that Boyer, the person she's talking to, knows that. She would have had to have gone out and done. Well, she could have said to him, is there anything else, and if you're correct, and he said, not that I know of, then what would have triggered her obligation to go further? Some piece of information that suggests to her that there are more criminal falsely convictions out there. In that case, so you have a false conviction for a false report, right? And then I see he has other scrapes with the law. Would it not be the natural thing to say is one of them for a falsity? Is it the natural thing to say? I don't think so. Well, why isn't that willfully blind? That's poor. Well, it is, but why is it not willfully blind? Well, it's not willfully blind because this judge didn't find that it was willfully blind. I mean, the facts. Yeah, it's true this judge didn't find it, but Judge LaPlante seems to have taken the position that there was no duty to inquire, period. Right. And you've just conceded that that's not an absolute principle, that there can be a duty to inquire. It depends if you think that's a duty to inquire or purposeful avoidance of the truth. Because I don't think those are the same thing. I don't think it's the same thing to say you have a duty to inquire versus you're putting your head in the sand because you suspect something is so, and then you just say I'm just not going to find the piece of paper that's going to tell me. The defendant cites a case that I think elucidates this from the First Amendment context. Before you get to that case, let's stick to this case. Here's the statement everyone's talked about here. He has other scrapes with the law. Couldn't a trier of fact find that an officer who is told that in this context and never follows up by saying what's the nature of those scrapes, what do you mean by that cryptic remark, that that officer was purposely avoiding learning the truth? Couldn't a fact finder find that? Couldn't a fact finder find that a person who made no further inquiry, a police officer, once she was told this affiant has further scrapes with the law and she doesn't ask the natural next question, what are the scrapes? What do you mean by that? What are you talking about? Nothing like that. It simply changes the subject and moves on. Couldn't a fact finder find that was purposeful avoidance? Well, first of all, the context is we're at the beginning of the investigation. She doesn't know anything. She's having an initial conversation with the officer where she's trying to just figure out who this person is. But my response would be if I say to you that this person has scrapes with the law and here's the false reporting conviction, I think a reasonable inference, scrapes suggest minor, right? You can have cuts, you can have scrapes. Scrapes are minor. She could have perceived that to be this is the worst thing. This is the worst thing. The script thing is the worst. And he's had some other minor run-ins. You could take that information and process it that way in a reasonable way. Yes, I think that's probably so. But we don't have any fact finding on that. But it's not inevitable. Instead, what we have is a district court which says categorically there's no further duty to inquire. Well, I'll suggest that when you read the record, you're not going to see this argument made by the defendant that she was willfully blind. I don't think you're going to see that, which explains why there's no express finding as to willful blindness that has been, as this case has come up to you and things have been narrowed in focus. That wouldn't be a reason to affirm. In other words, if the test that you propose is willful blindness rather than the more defendant-favorable test that the defendant was arguing for, but it's still not there is no duty to inquire, which is what the district court gave, we wouldn't affirm. We would just, I guess, vacate and remand for the fact finding on the right test, right? Well, if the argument made below was there was some duty to inquire and the argument is here. No, he's making a more generous argument. He says there's an even greater duty than you admit. Which is wrong. The district court says you're wrong, there's no duty at all. Right. But we find, supported by the government in this instance, that the right test is willful blindness. Why wouldn't the right thing to do would be vacate and remand to say the right test to figure this out is defendant raised properly the idea that there was a duty to inquire, but the right test for figuring out whether there's a duty is willful blindness. So if you make the wrong argument below. If you make a broader argument below. Right, you get a second chance. We have a case that I think is theoretically on point. Defendant argues for a two-level reduction for acceptance of responsibility. Government argues he's entitled to no reduction. District court splits the baby, says he's entitled to a one-level reduction. Get on appeal. Government says defendant can't make that argument in support of the one level because he never made it below. And we say that's silly. He argued for the whole baby. He got half the baby. Of course he can argue on appeal in support of the finding. It's the same principle. Since my time is up, I would just say before, without getting on to the waiver point, I would suggest to you that when, if you have not, or when you look at the record here, the basis for willful blindness, which is her purposeful avoidance of the truth, is not there. And you can say that's because it wasn't asked, but it's not there. And so if willful blindness is a standard, I don't think they've met it, and I don't think they get a second chance to do that. In any event, there's probable cause, even if it all worked out in their favor. Thank you.